***FEDERAL PUBLIC DEFENDER***
***Southern District of Texas***
Lyric Office Centre
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1669

| | | |
|---|---|---|
| **Federal Public Defender:** | | **Telephone:** |
| Marjorie A. Meyers | | **713.718.4600** |
| | May 31, 2023 | |
| **First Assistant:** | | **Fax:** |
| Michael L. Herman | | **713.718.4610** |

Mr. Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, Louisiana 70130

### Re: *United States v. Vargas*, No. 21-20140; Rule 28(j) Letter

Dear Mr. Cayce:

I write to draw attention to a relevant decision issued today, in *United States v. Castillo*, — F.4th —, No. 21-50054, slip op. at 5-34 (9th Cir. May 31, 2023).

In *Castillo*, a unanimous panel of the Ninth Circuit confronted and resolved the same two issues presented in this case. First, *Castillo* held that *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), controls the question whether Sentencing Guidelines commentary is entitled to judicial deference. *See Castillo*, slip op. at 14-17. "Applying the traditional tools of statutory construction to the text of" the pertinent regulation, "as *Kisor* instructs," the *Castillo* panel then concluded that Guideline Section 4B1.2(b) "unambiguously identifies a list of crimes that does not include [the] inchoate offenses" of conspiracy and attempt. *Id.* at 20. The panel thus held that the commentary purporting to expand Section 4B1.2(b)'s definition of "controlled substance offense" to reach inchoate drug crimes cannot command *Seminole Rock* (or *Auer*) deference. *Id.* at 20-22. The defendant's federal drug conspiracy conviction, it followed, could not serve as a career-offender predicate. *Id.* at 34.

*Castillo* is the latest decision adopting Mr. Vargas's view of both questions presented in this case. The Third, Fourth, Sixth, Ninth, and Eleventh Circuits now hold that *Kisor* applies to the Sentencing Commission's commentary. *See* Def. En Banc Br. 17-18; Def. Jan. 19 Rule 28(j) Letter. Those same circuits, with the addition of

the D.C. Circuit, all interpret the present iteration of Section 4B1.2(b)'s plain language to be unambiguous in its omission of inchoate versions of the listed drug predicates. *See* Def. En Banc Br. 32-35; Def. Jan. 19 Rule 28(j) Letter.

Mr. Vargas continues to urge the en banc Court to embrace the considered and persuasive reasoning of its fellow courts of appeals in resolving the questions presented.

Sincerely,

s/ *Evan G. Howze*

EVAN G. HOWZE
Assistant Federal Public Defender
Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on May 31, 2023, this Rule 28(j) letter was served upon counsel for appellee, Assistant United States Attorney Audrey Lynn Maness, via electronic filing.

s/ *Evan G. Howze*

EVAN G. HOWZE

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | No. 21-50054 |
| v. | D.C. Nos. 2:19-cr-00764-DSF-1 2:19-cr-00764-DSF |
| ROBERTO CASTILLO, AKA Roberto Enrique Castillo, AKA Ito, AKA Shadow, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted November 17, 2022
Pasadena, California

Filed May 31, 2023

Before: Kim McLane Wardlaw and William A. Fletcher,
Circuit Judges, and Matthew F. Kennelly,[*] District Judge.

Opinion by Judge Wardlaw

---

[*] The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

2                    UNITED STATES V. CASTILLO

### SUMMARY[**]

### Criminal Law

The panel vacated Roberto Castillo's sentence for conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841, and remanded for resentencing, in a case in which the district court concluded that this offense of conviction qualified Castillo as a career offender under United States Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1, as it was a "controlled substance offense" as defined by U.S.S.G. § 4B1.2.

The text of U.S.S.G. § 4B1.2(b) does not include "conspiracy to distribute" in its list of controlled substance offenses. Rather, Application Note 1 states that "controlled substance offenses" include "offenses of aiding and abetting, conspiring, and attempting to commit such offenses." This court has previously held that Application Note 1 permissibly expands on, and is consistent with, the text of § 4B1.2(b). *See United States v. Vea-Gonzales*, 999 F.2d 1326 (9th Cir. 1993), *overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994); *United States v. Crum*, 934 F.3d 963 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2629 (2020).

Under *Stinson v. United States*, 508 U.S. 36 (1993), the Guidelines' commentary must be given controlling weight unless it is plainly erroneous or inconsistent with the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

UNITED STATES V. CASTILLO                    3

regulation. *Stinson*'s broad deference to the commentary—
as well as the broad deference afforded to agencies'
interpretations of their own rules—has narrowed over
time. In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the
Supreme Court cabined the scope of this deference,
clarifying that the possibility of deference to an agency's
interpretation of its own rules can arise only if a regulation
is genuinely ambiguous. Under *Kisor*, not all reasonable
agency constructions of those truly ambiguous rules are
entitled to deference, and before concluding that a rule is
genuinely ambiguous, a court must exhaust all the traditional
tools of construction. If uncertainty does not exist after
exhausting these tools, there is no plausible reason for
deference.

Explaining that the more demanding standard articulated
in *Kisor* applies to the Guidelines' commentary, the panel
held that *Kisor* is an intervening decision and is clearly
irreconcilable with the holdings in *Vea-Gonzales* and
*Crum*. Applying the traditional tools of statutory
construction to the text of the guideline, as *Kisor* instructs,
the panel concluded that § 4B1.2(b) unambiguously
identifies a list of crimes that does not include inchoate
offenses. Because § 4B1.2(b)'s definition of "controlled
substance offense" is unambiguous, the Supreme Court's
decision in *Kisor* now makes it impermissible to defer to
Application Note 1 to determine whether conspiracy fits into
this definition. Accordingly, the panel held that *Crum* and
*Vea-Gonzales* applied an inappropriate level of deference to
§ 4B1.2(b)'s commentary, and consequently, these cases are
irreconcilable with *Kisor*'s instructions regarding review of
agency regulations and deference to an agency's, including
the Sentencing Commission's, interpretive commentary. To
the extent that *Crum* and *Vea-Gonzales* hold that an inchoate

4                    UNITED STATES V. CASTILLO

offense is a "controlled substance offense" for career enhancement purposes under the Sentencing Guidelines, the panel overruled them.

Further, deference to Application Note 1 raises grave constitutional concerns. The panel wrote that the Sentencing Commission's lack of accountability in its creation and amendment of the commentary raises constitutional concerns when a court defers to commentary that expands unambiguous Guidelines, particularly because of the extraordinary power the Commission has over individuals' liberty interests. Here, Castillo's career offender enhancement increased his advisory sentence range from 151–188 months to 262–327 months under the Sentencing Guidelines. And his nearly 22-year sentence—imposed by the district court based on the Sentencing Guidelines—was approximately 7 to 10 years greater than it would have been without the enhancement, assuming the district court would have sentenced Castillo within the advisory sentence range. The panel wrote that surely neither *Kisor* nor *Stinson* permitted the Sentencing Commission to invoke its general interpretative authority via commentary to impose such a massive impact on a defendant with no grounding in the Guidelines themselves.

Because the text of § 4B1.2(b) unambiguously does not include inchoate offenses, and because the court is no longer permitted to rely on the commentary of an unambiguous guideline after *Kisor*, the panel held that Castillo's conspiracy conviction is not a "controlled substance offense" under § 4B1.1.

UNITED STATES V. CASTILLO                    5

## COUNSEL

James H. Locklin (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office; Los Angeles, California; for Defendant-Appellant.

David R. Friedman (argued) and Lynda Lao, Assistant United States Attorneys; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; Tracy L. Wilkison, United States Attorney; Office of the United States Attorney; Los Angeles, California; for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Roberto Castillo pleaded guilty to the crime of conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841. The district court concluded that this offense of conviction qualified Castillo as a career offender under United States Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1, as it was a "controlled substance offense," as defined by U.S.S.G. § 4B1.2(b). However, the text of U.S.S.G. § 4B1.2(b) does not actually include "conspiracy to distribute" in its list of controlled substance offenses. Rather, Application Note 1 states that "controlled substance offenses" include "offenses of aiding and abetting, conspiring, and attempting to commit such offenses." We have previously held that Application Note 1 permissibly expands on, and is consistent with, the text of U.S.S.G. § 4B1.2(b). *See United States v. Vea-*

6                       UNITED STATES V. CASTILLO

*Gonzales*, 999 F.2d 1326 (9th Cir. 1993), *overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994); *United States v. Crum*, 934 F.3d 963 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2629 (2020). We must decide whether *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), is intervening "clearly irreconcilable" authority that requires us to examine the plain text of the guideline, determine whether there is any ambiguity, and if there is not, to disregard the interpretive gloss set forth in the guideline's commentary. *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003). In short, we must decide which side of a growing intercircuit split is correct on the question whether Application Note 1 improperly expands the definition of "controlled substance offense" in § 4B1.2(b).

Because we conclude that we must apply the Supreme Court's decision in *Kisor*, and that Application Note 1 improperly expands the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b), we vacate Castillo's sentence and remand for resentencing consistent with this opinion.

## I.

In May 2019, Roberto Castillo sold approximately 14 grams of methamphetamine to a government informant for $100. In June 2019, he sold the same informant 53 grams of methamphetamine for $400. In July 2019, Castillo and Casandra Cachu, Castillo's codefendant, arranged to sell the informant about 111.1 grams of methamphetamine for $440. Castillo and the informant made arrangements by phone, and Cachu delivered the drugs to the informant. In the course of these events, Castillo allegedly distributed or "conspired to distribute" a total of approximately 178.1 grams of methamphetamine.

UNITED STATES V. CASTILLO                    7

Castillo was arrested in January 2020. A grand jury indicted Castillo on four counts, including one count of conspiracy to distribute methamphetamine, 21 U.S.C. §§ 846, 841. On September 21, 2020, Castillo pleaded guilty to the conspiracy count.

At sentencing, the district court found the Presentence Report (PSR) prepared by the Probation Officer accurate and correct, and so adopted it. For the offense of conviction, the PSR calculated the base offense level at 32 based on the Drug Quantity Table set forth in U.S.S.G. § 2D1.1(c). The PSR then found that Castillo had two prior convictions under Cal. Health & Safety Code § 11378 that qualified as controlled substances offenses under U.S.S.G. §§ 4B1.1; 4B1.2(b).[1] The PSR then determined that Castillo's instant conspiracy to distribute offense also was a controlled substance offense under the career offender guideline, and accordingly, increased the offense level by 5 to 37. It then recommended a 3-point reduction for acceptance of responsibility, to reach a total offense level of 34. The Probation Officer calculated a criminal history category of VI, for an advisory sentence range of 262 to 327 months. The Probation Officer recommended a sentence at the low end of the Guidelines, and the Government agreed. Absent the career offender enhancement, the applicable advisory range for Castillo would have been significantly lower—151 to 188 months.

---

[1] Castillo's prior offenses include two convictions for possession of methamphetamine for sale, Los Angeles County Superior Court, Dkt. Nos. PA049723 and PA081690, in violation of California Health & Safety Code § 11378. Castillo was first convicted of this offense in December 2004, and sentenced to 28 months in state prison. He was again convicted of the same offense in November 2014, and sentenced to another two years in state prison.

8                    UNITED STATES V. CASTILLO

The district court sentenced Castillo to 262 months' custody and ten years of supervised release. The court relied on the Probation Officer's determination that Castillo's conspiracy conviction is a "controlled substance offense" for purposes of the career offender adjustment. Castillo appeals his sentence.

## II.

Under the Guidelines, a defendant is a "career offender" if: (1) the defendant was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a).

Sentencing Guideline § 4B1.2 provides the definitions for the terms used in U.S.S.G. § 4B1.1. Subsection 4B1.2(b) defines the term "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b).

The text of § 4B1.2(b) does not identify conspiracy to commit any of the offenses as such an offense, but the guideline's commentary expands the definition to include

UNITED STATES V. CASTILLO                    9

conspiracy, as well as aiding and abetting or attempting the identified crimes.    Application Note 1 to U.S.S.G. § 4B1.2(b) provides that "controlled substance offenses" "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2, application note 1.

Conspiracy is an inchoate offense that is separate and independent from the crime that is the subject of the conspiracy. *See United States v. Iribe*, 564 F.3d 1155, 1160 (9th Cir. 2009) ("Conspiracy to commit a crime is not equivalent to the completion of that crime."). Black's Law Dictionary defines "inchoate offense" as a "step toward the commission of another crime, the step in itself being serious enough to merit punishment." *Inchoate Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Black's lists the three inchoate offenses as "attempt, conspiracy, and solicitation." *Id.* Because "[b]y definition inchoate crimes "do not require completion of the criminal objective," *United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007), the Guidelines distinguish between inchoate offenses and underlying substantive offenses. For instance, the Guidelines note that if the offense is a conspiracy to commit a substantive offense and is not covered by a specific offense guideline, the base level must be decreased by 3 levels unless certain narrow circumstances apply. U.S.S.G. § 2X1.1(b)(2), (c). And for career offender purposes, the guideline's text includes an inchoate offense— "attempted use"—in the definition of a "crime of violence," *id.* § 4B1.2(a), whereas it does not include any inchoate offenses in the definition of a "controlled substance offense," *id.* § 4B1.2(b).

### III.

As a general matter, "[w]e review the district court's interpretation of the Sentencing Guidelines de novo." *United States v. Rivera-Constantino*, 798 F.3d 900, 902 (9th Cir. 2015) (citing *United States v. Grajeda*, 581 F.3d 1186, 1188 (9th Cir. 2009)).  But here, the parties dispute the proper standard to apply to our review of the district court's interpretation of the Sentencing Guidelines because Castillo did not challenge the career offender adjustment in district court.  If an appellant fails to raise an issue in the district court proceedings, Federal Rule of Criminal Procedure 52(b) affords appellate courts discretion "to correct a forfeited error" if the appellant shows (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Henderson v. United States*, 568 U.S. 266, 272 (2013).

The Government argues that we should apply plain error review under Federal Rule of Criminal Procedure 52(b).  Castillo responds that we may apply the de novo standard, even though the issue was not raised in the district court, because the issue before us is a purely legal question and the Government will suffer no prejudice as a result.

In *United States v. McAdory*, 935 F.3d 838 (9th Cir. 2019), we held that "we are not limited to [plain error] review when we are presented with [1] a question that is purely one of law and [2] where the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Id.* at 841–42 (second and third alterations in original).  Therefore, because the question in *McAdory*— whether an offense qualifies as a predicate felony—was a purely legal question, we applied the de novo standard of

review. *Id.*; *see also United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009) (holding that "we are not limited to [the plain error] standard of review when we are presented with a question that 'is purely one of law' and where 'the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court . . .'" (citation omitted)). Similarly, here, neither party disputes that the applicability of the career offender requirements is a purely legal question, and the Government has not argued that it will suffer prejudice because Castillo failed to raise the issue in district court.

But the assumption that de novo review applies to purely legal questions that have not been argued below has been called into question both by our court and by the Supreme Court. *See United States v. Zhou*, 838 F.3d 1007, 1015–16 (9th Cir. 2016) (Graber, J., concurring) ("Our 'pure question of law' exception contradicts Rule 52(b) and the Supreme Court's case law."); *Henderson*, 568 U.S. at 269–70 (applying the plain error standard to a "[d]istrict [c]ourt's decision on a substantive legal question that was unsettled at the time the trial court acted").

Because *McAdory* controls in our circuit but it remains an open question "whether [our] precedent can be reconciled with the Supreme Court's cases interpreting Federal Rule of Criminal Procedure 52(b)," we assume without deciding that de novo review applies here. *United States v. Begay*, 33 F.4th 1081, 1090 n.3 (9th Cir. 2022) (en banc). It is unnecessary for us to decide the appropriate standard of review to apply because "the outcome of our analysis would be the same whether we apply plain error or de novo review." *Id.* at 1089.

## IV.

Castillo argues that the district court erred by concluding that his offense of conviction—conspiracy to distribute—is a "controlled substance offense" that qualifies him as a career offender under U.S.S.G. § 4B1.1.

We agree. Castillo's sentence was for a drug conspiracy. The Sentencing Guidelines' definition of "controlled substance offense" for career offender enhancements currently does *not* include inchoate crimes like conspiracies, although the commentary extends the definition to such crimes. U.S.S.G. § 4B1.2(b), application note 1. Because only the commentary includes inchoate crimes, and the text of the guideline unambiguously does not, applying the Supreme Court's *Kisor* analysis, we must conclude that Castillo's conspiracy conviction does not qualify as a "controlled substance offense" under U.S.S.G. § 4B1.2(b).

### A.

The Government argues that our precedent in *Vea-Gonzales* and *Crum* foreclose Castillo's argument that his conspiracy to distribute conviction is not a "controlled substance offense."[2]

---

[2] The Government also argues that we have already held that 21 U.S.C. § 846 qualifies as a controlled substance offense in *United States v. O'Brien*, 52 F.3d 277, 279 (9th Cir. 1995). But *O'Brien* did not address the question before us. In *O'Brien*, a defendant charged with conspiracy to distribute cocaine and marijuana under § 846 argued that he did not qualify for the same statutory life-term enhancement as mandated for the substantive underlying conviction under § 841(b)(1)(A)(ii)(II), because he did not plead guilty to the underlying drug offense described in § 841(a)(1). *Id.* at 278. The *O'Brien* court noted that an individual convicted of attempt or conspiracy is subject to the same penalties as those prescribed for the underlying offense (the standard articulated in

UNITED STATES V. CASTILLO                    13

In *Vea-Gonzales*, the defendant made the same argument that Castillo makes here: that Application Note 1 to U.S.S.G. § 4B1.2(b), "which states that the predicate offenses include aiding and abetting, impermissibly exceeds the scope of [§] 4B1.2(b) itself." 999 F.2d at 1330. We applied a standard of interpretation nearly unrecognizable today. We wrote that "[i]n interpreting the Guidelines and their accompanying commentaries, courts are required to consider them together, and, if possible, as consistent with each other." *Id*. We held that only if the guideline is irreconcilable with the commentary "is the court to consider the guideline alone." *Id*. We found the guideline and commentary were "perfectly consistent" because "[t]he guideline refers to violations of laws prohibiting the manufacture, import, export, distribution, or dispensing of drugs," and "[a]iding and abetting, conspiracy, and attempt are all violations of those laws." *Id.*

Twenty-six years later, in *Crum*, we again addressed the question whether "Application Note 1 of § 4B1.2 lacks legal force because it is inconsistent with the text of the guideline." 934 F.3d at 966. We explained that if it were inconsistent, courts would be prohibited "from relying on the commentary to expand the definition of 'controlled substance offense' to include solicitation"—the predicate crime at issue in *Crum*. *Id.* We further noted the developing

---

the statutory language of § 846), and therefore the defendant was subject to the life-term enhancement. *Id.* But *O'Brien* did not consider whether § 4B1.2(b)'s commentary is authoritative. In *O'Brien*, we considered only whether the Sentencing Commission had the statutory authority under 28 U.S.C. § 994(h) to include "conspiracy" within the definition of "controlled substance offense" in the career offender provision of the Guidelines—an authority neither party disputes here. *Id.* at 279. Therefore, *O'Brien* is not controlling.

14                UNITED STATES V. CASTILLO

intercircuit split on the inconsistency vel non between the Guidelines and the commentary. We said "[i]f we were free to do so," we would follow the circuits that had held that the two were inconsistent and hold that "the commentary improperly expands the definition of 'controlled substance offense' to include other offenses not listed in the text of the guideline." *Id.* at 966. We found it troubling that "the Sentencing Commission ha[d] exercised its interpretive authority to expand the definition of 'controlled substance offense' in this way, without any grounding in the text of § 4B1.2(b) and without affording any opportunity for congressional review." *Id.* However, we were "compelled" to follow *Vea-Gonzales*'s holding that the two were consistent because "[n]o intervening higher authority [was] 'clearly irreconcilable' with the reasoning of *Vea-Gonzales*." *Id.* at 966–67.

*Kisor* was decided half a year after oral argument in *Crum*, and was not cited to the *Crum* panel before it issued its decision. The decision does not indicate that the *Crum* panel considered in any way the effect of *Kisor*'s new rules of guideline interpretation on the reasoning of *Vea-Gonzales*. We do so now.

B.

In *Stinson v. United States*, <u>508 U.S. 36, 38</u>–41 (1993)—decided 30 years ago as of this month—the Supreme Court clarified the legal force of the Guidelines' commentary. It held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 39.

UNITED STATES V. CASTILLO                    15

The *Stinson* Court explained that the Sentencing Commission, created by the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq*., "promulgate[d] the guidelines by virtue of an express congressional delegation of authority for rulemaking"—the "equivalent of legislative rules adopted by federal agencies." *Stinson*, 508 U.S. at 44–45. And any amendment to the Guidelines must be submitted to Congress for a six-month period of review, during which time Congress can "modify or disapprove them." *Id.* at 41. However, unlike the Guidelines themselves (but like an agency's interpretation of its own regulations), the Guidelines' commentary is not subject to mandatory congressional review. *Id.* at 45. Under the administrative agency analogy then, "commentary [should] be treated," and receive the same level of deference as, "an agency's interpretation of its own legislative rule." *Id.* at 44.

Therefore, under *Stinson*, commentary "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* at 45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Notably, under *Stinson* deference, commentary "provides concrete guidance as to how even unambiguous guidelines are to be applied in practice." *Id.* at 44. As a result, even when commentary may expand the meaning of the Guidelines, if it is not plainly inconsistent with the Guidelines, it is binding on the federal courts. *Id.* at 44–45; *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that a federal agency's interpretation of a regulation is controlling where it is not "plainly erroneous or inconsistent with the regulation" (internal quotation marks and citation omitted)).

*Stinson*'s broad deference to the Guidelines' commentary—as well as the broad deference afforded to

16                UNITED STATES V. CASTILLO

agencies' interpretations of their own rules described in *Seminole Rock* and *Auer*—has narrowed over time. Recently, in *Kisor*, the Supreme Court "cabined [the] scope" of this deference, clarifying that "the possibility of deference" to an agency's interpretation of its own rules "can arise *only* if a regulation is genuinely ambiguous." 139 S. Ct. at 2414, 2418 (emphasis added). Still more, the Court reasoned, "not all reasonable agency constructions of those truly ambiguous rules are entitled to deference." *Id.* at 2414. And, "before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* at 2415 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). "If uncertainty does not exist" after exhausting these tools, "there is no plausible reason for deference." *Id.*

The more demanding deference standard articulated in *Kisor* applies to the Guidelines' commentary. *Kisor* directly examined and narrowed *Seminole Rock* and *Auer* deference in the context of an administrative agency's interpretation of its own regulation, noting that such deference is not permitted without first finding the regulation ambiguous. *Stinson* deference is directly grounded in *Seminole Rock* and *Auer* deference. Indeed, the deference standard articulated by the Court in *Stinson*—that commentary "must be given 'controlling weight unless it is plainly erroneous or inconsistent'" with the guideline's text—is a direct quotation from *Seminole Rock*. *Stinson*, 508 U.S. at 45 (quoting *Seminole Rock*, 325 U.S. at 414). And although *Kisor* did not distinguish between an agency's interpretation of its own regulations and the commentary's interpretation of the Guidelines, "the only way to harmonize [*Kisor* and *Stinson*] is to conclude that *Kisor*'s gloss on *Auer* and *Seminole Rock* applies to *Stinson*." *United States v. Dupree*, 57 F.4th 1269,

UNITED STATES V. CASTILLO                 17

1275 (11th Cir. 2023) (en banc) ("*Stinson* adopted word for word the test the *Kisor* majority regarded as a 'caricature,' so the continued mechanical application of that test would conflict directly with *Kisor*."). Therefore, to "follow *Stinson*'s instruction to treat the commentary like an agency's interpretation of its own rule, we must apply *Kisor*'s clarification of *Auer* deference to *Stinson*." *Id.* at 1276.

## C.

Castillo argues that after *Kisor*, *Vea-Gonzales* and *Crum* are no longer binding on us on the question whether Application Note 1 is a permissible interpretation of U.S.S.G. § 4B1.2(b). We are generally bound by our own precedent. However, "a three-judge panel may reexamine normally controlling circuit precedent in the face of an intervening United States Supreme Court decision" in certain narrow circumstances such as "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *See Miller*, 335 F.3d at 892–93.

Castillo's argument tees up two questions: (1) is *Kisor* an intervening decision, and (2) is *Kisor* clearly irreconcilable with our prior decisions, such that we may reexamine our precedent as a three-judge panel? We answer both questions in the affirmative. *Kisor* is an intervening decision of a higher authority that is clearly irreconcilable with our holdings in *Vea-Gonzales* and *Crum*.

### 1.

*Kisor* serves as an intervening decision. The *Crum* panel did not address the effect of *Kisor* on our deference to Application Note 1. The Government argues that because

18          UNITED STATES V. CASTILLO

the Supreme Court issued its opinion in *Kisor* two months before we issued our decision in *Crum*, *Kisor* is not an intervening decision.

We disagree. The Supreme Court issued the *Kisor* decision *after* we heard oral argument in *Crum*, and less than two months before the *Crum* panel rendered its opinion. The litigants did not raise *Kisor* to the panel before it issued its decision. The *Crum* panel applied *Stinson*'s deference standard to reach its holding, and expressly held it was not aware of intervening higher authority.[3] *Crum*, <u>934 F.3d at 967</u>.

Contrary to the Government's suggestion, no panel in our circuit has considered *Kisor*'s effect on our interpretation of Application Note 1 since *Crum*. In *United States v. House*, <u>31 F.4th 745</u> (9th Cir. 2022) (per curiam), we stated that we were "bound by *Crum*" to hold that Application Note 1 "expands the prohibited conduct" of § 4B1.2 to inchoate offenses. *Id.* at 749, 753. The *House* decision did not mention *Kisor*; nor did the parties raise the potential effect of *Kisor* on the legal force accorded to Application Note 1 in their briefings. *See generally* Parties' Briefings, *United*

---

[3] After the decision was published, Crum filed a petition for rehearing and rehearing en banc, arguing that the panel should not have relied on *Vea-Gonzales*. Appellee's Petition for Rehearing and Rehearing En Banc at 2, *United States v. Crum*, <u>934 F.3d 963</u> (9th Cir. 2019) (No. 17-30261), ECF No. 42. Although the petition mentioned *Kisor*, it did not directly address the issue before us now. Rather, it focused on the *Crum* panel's mistaken reliance on the "out-of-date" pre-*Stinson* deference standard articulated in *Vea-Gonzales*. *Id.* at 2, 12–13 (comparing *Stinson* and *Vea-Gonzales* and noting that *Stinson* subjects commentary to *Auer/Seminole Rock* deference, binding courts only if the commentary bears on the construction of the guideline it is interpreting). The case was not reheard by the panel or en banc.

UNITED STATES V. CASTILLO                          19

*States v. House*, 31 F.4th 745 (9th Cir. 2022) (No. 20-30169), ECF Nos. 4, 18, 23. Because the *House* court did not consider the impact of *Kisor*, it does not bind us. *See United States v. Hogue*, No. 20-30043, 2022 WL 4103627, at *2 (9th Cir. Sept. 8, 2022) (Paez, J., concurring) ("None of this court's opinions evaluating Application Note 1 have considered whether the Supreme Court's decision in *Kisor* clarified the rule laid out in *Stinson*." (internal citations omitted)).

Nor have we decided how *Kisor* affects the extent of deference owed to other commentary interpreting the Guidelines. In *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022)—decided three years after *Kisor*—we applied *Stinson* deference to conclude that Application Note 3(F)(i)'s interpretation of "loss" for calculating the applicable offense level for crimes such as credit card fraud under U.S.S.G. § 2B1.1 is not legally binding on courts. *Id.* at 1134. We reasoned that the Application Note, which defined "loss" accorded to a stolen credit card as an automatic $500, is inconsistent with the plain meaning of the word "loss" in the guideline. *Id.* at 1137. We chose "not [to] express a view" on whether we are required to "apply[] the narrower deference set out in [*Kisor*]," because the Application Note in that instance was not binding even under the broader test laid out in *Stinson*. *Id.* at 1138–39.

Because neither *Vea-Gonzales*, *Crum*, nor any other Ninth Circuit decision analyzed Application Note 1's validity under *Kisor*, no "case binds us on this question." *Kirilyuk*, 29 F.4th at 1134 (noting that even though "two published cases" had interpreted and applied the application note at issue, "no Ninth Circuit case ha[d] considered whether [the] Application Note . . . conflicts with the meaning of 'loss'" in the Guidelines, and therefore the issue

20          UNITED STATES V. CASTILLO

"remain[ed] an open question in our circuit"). Surely, issues which are "neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* (citation omitted); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (holding that when a court has "never squarely addressed the issue, and ha[s] at most assumed" something in a prior decision, it is "free to address the issue on the merits"); *Medina-Rodriguez v. Barr*, 979 F.3d 738, 747 (9th Cir. 2020) (noting that "unstated assumptions on non-litigated issues are not precedential holdings binding future decisions" (citation omitted)).

Because no prior Ninth Circuit panel has considered the effect of *Kisor* on the *Stinson* deference we previously applied to the Guidelines' commentary, we conclude that *Kisor* is an intervening decision of a higher authority.

2.

*Kisor*'s reasoning is clearly irreconcilable with *Vea-Gonzales* and *Crum*. Applying the traditional tools of statutory construction to the text of the guideline, as *Kisor* instructs, we conclude that § 4B1.2(b) unambiguously identifies a list of crimes that does not include inchoate offenses. The Government's argument that *Kisor* is not irreconcilable with *Vea-Gonzales* and *Crum* because "either the career offender guideline applies here unambiguously [and encompasses conspiracies], or the commentary is entitled to *Kisor* deference because the guideline is ambiguous," is not supported by the text of § 4B1.2(b).

Section 4B1.2(b) sets forth the specific offenses that qualify as controlled substance offenses—manufacturing, importing, exporting, distributing, dispensing, or possessing. The canon of construction, *expressio unius est exclusio*

UNITED STATES V. CASTILLO                    21

*alterius*, directs us to infer from Congress's express inclusion of enumerated offenses that its exclusion of inchoate crimes was intentional. *See United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1091 (D.C. Cir. 2018). Because the plain text of § 4B1.2(b) unambiguously excludes inchoate crimes, we are not permitted under *Kisor* to defer to the Commission's commentary. *See Dupree*, 57 F.4th at 1277 ("A definition which declares what a term means excludes any meaning that is not stated." (internal quotation marks omitted) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Further, the exclusion of inchoate offenses in § 4B1.2(b) stands in sharp contrast to the inclusion of attempt, an inchoate offense, within a different subsection of the same provision: Section 4B1.2(b)'s plain language clearly omits inchoate offenses in the definition of the term "controlled substance offense," whereas § 4B1.2(a)'s plain language includes some inchoate offenses in the definition of the term "crime of violence." *See* U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" to include an offense that, among other things, "has as an element the use, *attempted* use, or threatened use of physical force against the person of another" (emphasis added)). The Supreme Court has emphasized that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another," and that this canon "applies with particular force" when the use and omission occur "in close proximity" to one another. *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391–92 (2015).

Here, this distinction between definitions in neighboring subsections within the same provision shows that the drafters knew how to include inchoate offenses in defining

22          UNITED STATES V. CASTILLO

"controlled substance offense" for sentencing enhancement purposes, but chose not to do so.  *See Winstead*, 890 F.3d at 1092 ("[W]hen enumerating a list of specific offenses that qualify to support career offender status, the drafters declined to include attempt despite its presence elsewhere."); *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, [the drafter] has shown that it knows how to adopt the omitted language or provision.").  That the Sentencing Commission chose to add inchoate offenses to the definition of "controlled substance offenses" in the commentary, demonstrates that it, too, recognized they were omitted from the § 4B1.2(b) definition.

a.

We are not alone in re-evaluating our precedent in light of the Supreme Court's decision in *Kisor*.  Prior to *Kisor*, circuit courts were already divided on whether to afford deference to Application Note 1 in determining whether § 4B1.2(b) includes inchoate offenses.  *Kisor* deepened the existing circuit split, as our sister circuits began to rethink their broad deference to the Guidelines' commentary.

Before *Kisor*, when the more permissive deference standard laid out in *Stinson* was the law of the land, only the D.C. and Sixth Circuits declined to defer to Application Note 1 in defining "controlled substance offenses."  *See Winstead*, 890 F.3d at 1091; *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam).  These circuits held that, under *Stinson*, the definition of "controlled substance offense" does not include inchoate offenses.

The D.C. Circuit in *Winstead* held that § 4B1.2(b)'s "commentary in Application Note 1 exceeds its authority under *Stinson*" because the guideline and its accompanying

UNITED STATES V. CASTILLO                    23

commentary are "indeed inconsistent," and the commentary
impermissibly expands the scope of the plain language of the
guideline.   890 F.3d at 1091.   Invoking the canon of
*expressio unius*, the *Winstead* court explained that
"[§] 4B1.2(b) presents a very detailed 'definition' of
controlled substance offense that clearly excludes inchoate
offenses."   *Id.*   The D.C. Circuit concluded that "the
Commission showed within § 4B1.2 itself that it knows how
to include attempt offenses when it intends to do so." *Id.*  The
court noted "[i]f the Commission wishes to expand the
definition of 'controlled substance offenses' to include
attempts, it may seek to amend the language of the
guidelines by submitting the change for congressional
review." *Id.* at 1092.

    The Sixth Circuit agreed with *Winstead* and held that
"[t]he text of § 4B1.2(b) controls, and it makes clear that
attempt crimes do not qualify as controlled substance
offenses." *Havis*, 927 F.3d at 387.  The Sixth Circuit wrote
that application notes are to be "*interpretations of*, not
*additions to*, the Guidelines themselves." *Id*. at 386 (quoting
*United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016)).
Citing *Winstead*, it reasoned that "[if] that were not so, the
institutional constraints that make the Guidelines
constitutional in the first place—congressional review and
notice and comment—would lose their meaning." *Id*. at
386–87.  But here, the commentary "d[oes] not interpret a
term in the guideline itself," but rather "add[s] an offense not
listed in the guideline*." Id.* at 386.  The *Havis* court
concluded that the "use of commentary to add attempt

24          UNITED STATES V. CASTILLO

crimes to the definition of 'controlled substance offense' deserves no deference" under *Stinson*.  *Id.* at 387.[4]

However, before *Kisor* was decided, the majority of the remaining circuits agreed with our decisions in *Vea-Gonzales* and *Crum* that because Application Note 1 was consistent with the "controlled substance offense" guideline, courts would defer to it, making inchoate offenses "controlled substance offenses."  *See United States v. Piper*, 35 F.3d 611, 617 (1st Cir. 1994); *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir. 1995); *United States v. Hightower*, 25 F.3d 182, 187 (3d Cir. 1994), *overruled by Nasir*, 17 F.4th 459; *United States v. Mendoza-Figueroa*, 65 F.3d 691, 692–93 (8th Cir. 1995) (en banc); *United States v. Smith*, 54 F.3d 690, 693 (11th Cir. 1995), *overruled by Dupree*, 57 F.4th 1269; *see also United States v. Walton*, 56 F.3d 551, 555–56 (4th Cir. 1995) (relying on Application Note 1 without explicitly discussing the consistency between the commentary and the "controlled substance offense" guideline or conducting a deference analysis); *United States v. Lightbourn*, 115 F.3d 291, 293 (5th Cir. 1997) (same); *Boyer v. United States*, 55 F.3d 296, 297–98 (7th Cir. 1995) (same); *United States v. Allen*, 24 F.3d 1180, 1185–86 (10th Cir. 1994) (same).

---

[4] Although *Havis* was published after *Kisor*, the decision did not cite or even discuss *Kisor*'s effect on the deference afforded to the Guidelines' commentary.  *See generally Havis*, 972 F.3d 382.  Indeed, once the Sixth Circuit had the opportunity to examine the implications of *Kisor*, it recognized that its pre-*Kisor* cases had upheld commentary expanding the Guidelines, but those cases could not stand after *Kisor*.  *See United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021).

UNITED STATES V. CASTILLO                    25

b.

After the Supreme Court issued its decision in *Kisor*, however, the Third, Fourth, and Eleventh Circuits joined the Sixth and D.C. Circuits to hold that we cannot defer to Application Note 1 to interpret § 4B1.2(b). *See Nasir*, 17 F.4th at 471 (explaining that, after *Kisor*, it is clear that the court went "too far in affording deference to the guidelines' commentary under" *Stinson*); *United States v. Campbell*, 22 F.4th 438, 444 (4th Cir. 2022) (noting that "if there were any doubt that under *Stinson* the plain text" of the guideline requires the conclusion that an attempt offense is not a "controlled substance offense," *Kisor* "renders this conclusion indisputable"); *Dupree*, 57 F.4th at 1271, 1277 (holding that, "[w]ith *Kisor*'s refined deference scheme in mind," the "definition of 'controlled substance offense' in § 4B1.2(b) of the Sentencing Guidelines does not include inchoate offenses like conspiracy and attempt"). Specifically, the Third and Eleventh Circuits overturned their circuit caselaw relying on *Stinson*, holding that deference to Application Note 1 is irreconcilable with *Kisor*. Accordingly, post-*Kisor*, the Third, Fourth, Sixth, Eleventh, and D.C. Circuits do not defer to the expanded definition of "controlled substance offense" in Application Note 1.[5]

In *Nasir*, the Third Circuit overturned its prior ruling in *Hightower*, 25 F.3d at 187—in which it had relied on *Stinson*'s understanding of deference to commentary—after

---

[5] The Fifth Circuit is also reconsidering its precedent deferring to the Sentencing Guidelines' commentary. On August 24, 2022, the Fifth Circuit granted en banc review to consider *Kisor*'s impact on its deference to commentary. *See United States v. Vargas*, 35 F.4th 936 (5th Cir. 2022)*, reh'g en banc granted, vacated*, 45 F.4th 1083 (5th Cir. 2022). As of May 23, 2023, the Fifth Circuit's decision remains pending.

26          UNITED STATES V. CASTILLO

*Kisor* was issued. *Nasir*, 17 F.4th at 470–71. The court explained:

> Our interpretation of the commentary at issue in *Hightower* – the same commentary before us now – was informed by the then-prevailing understanding of the deference that should be given to agency interpretations of their own regulations. Thus, although we recognized that the commentary expanded and did not merely interpret the definition of "controlled substance offense," we nevertheless gave it binding effect. In doing so, we may have gone too far in affording deference to the guidelines' commentary under the standard set forth in *Stinson*. Indeed, after the Supreme Court's recent decision in [*Kisor*], it is clear that such an interpretation is not warranted.

*Id.*

The Third Circuit acknowledged that the Supreme Court in *Kisor* "cut back on what had been understood to be uncritical and broad deference to agency interpretations of regulations and explained that *Auer*, or *Seminole Rock*, deference should only be applied when a regulation is genuinely ambiguous." *Id.* at 471. Applying *Kisor*'s refined deference standard, the *Nasir* court held that "a plain-text reading of [§] 4B1.2(b)" indicates that it does not include inchoate crimes. *Id.* at 471; *see also Riccardi*, 989 F.3d at 485 (recognizing that broad deference to Guidelines' commentary "could not stand after *Kisor*," and that *Kisor* "must awake us 'from our slumber of reflexive deference' to the commentary" (citation omitted)); *Mountain Cmtys. for*

UNITED STATES V. CASTILLO                    27

*Fire Safety v. Elliott*, 25 F.4th 667, 675 (9th Cir. 2022) (noting that in *Kisor*, "the [Supreme] Court has recently retrenched on [] *Auer* deference").

And recently, in *Dupree*, the Eleventh Circuit joined the Third Circuit by overruling its prior holdings in *United States v. Weir*, 51 F.3d 1031 (11th Cir. 1995), and *Smith*, 54 F.3d 690, in light of *Kisor* to conclude that "the definition of 'controlled substance offense' in § 4B1.2(b) does not include inchoate offenses." *Dupree*, 57 F.4th at 1271. The Eleventh Circuit clarified that it was not disregarding *Stinson*'s holding, but rather it was "apply[ing] *Kisor*'s clarification of *Auer* deference to *Stinson*." *Dupree*, 57 F.4th at 1276. Beginning with the text of § 4B1.2(b), and "applying our traditional tools of statutory interpretation," the *Dupree* court concluded that the plain language of the guideline's text "unambiguously excludes inchoate offenses." *Id.* at 1277. Because it found the guideline's text unambiguous, the Eleventh Circuit held that its analysis was complete, and it had "no need to consider, much less defer to, the commentary in Application Note 1." *Id.* at 1279.

The Fourth Circuit has also held that an attempt crime does not constitute a "controlled substance offense" under *Kisor* because the guideline's plain text does not include inchoate crimes. *Campbell*, 22 F.4th at 447. The *Campbell* court determined that this was an issue of first impression, even though it had applied Application Note 1 in its prior decision in *United States v. Kennedy*, 32 F.3d 876 (4th Cir. 1994). *Id.*; *see also Kennedy*, 32 F.3d at 888 (deferring to Application Note 1 and determining that a defendant convicted of conspiracy to distribute cocaine qualified as a career offender under § 4B1.1). The *Campbell* court held that *Kennedy* was not dispositive because *Kennedy* did not determine whether deference to the commentary was

28          UNITED STATES V. CASTILLO

appropriate; it discussed only whether the Sentencing Commission had the statutory authority to add inchoate offenses to the definition of "controlled substance offense." *See Campbell*, 22 F.4th at 447. But even assuming *Kennedy* and its past cases had resolved the question before it, the *Campbell* court held that "*Kisor* would have at the very least undermined those cases' holdings," and therefore it would "not [have been] bound" by its prior precedent. *Id*.[6]

On the other side of the post-*Kisor* split, the First, Second, Seventh, Eighth, and Tenth Circuits have continued to defer to Application Note 1. Significantly, however, while these opinions were published after the Supreme Court's decision in *Kisor*, nearly all fail to address how *Kisor* affects deference to the Guidelines' commentary. *See United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020) (relying on *Stinson* and prior circuit precedent to conclude that Application Note 1 is binding, without engaging in an analysis of *Kisor*); *United States v. Smith*, 989

---

[6] We note that twelve days after the Fourth Circuit published *Campbell*, it published *United States v. Moses*, 23 F.4th 347 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (2023), in which it found that Application Note 5(C) to U.S.S.G. § 1B1.3 should be afforded binding effect under *Stinson*. *Id.* at 349. In doing so, the *Moses* court held that "*Stinson* continues to apply unaltered by *Kisor*." *Id.* This directly conflicts with the *Campbell* court's opinion. *See id.* at 359 (King, J., concurring in part) ("The legal analysis of the panel majority in this case conflicts with the *Campbell* precedent in concluding that the Supreme Court's decision in *Kisor* is inapplicable. Crucially, no panel of this Court is entitled to circumscribe or undermine an earlier panel decision." (citations omitted)). Because *Campbell* is the earlier ruling, *Campbell* controls; moreover, unlike *Moses*, *Campbell* specifically declines to defer to Application Note 1. Therefore, we must assume that Fourth Circuit precedent holds that inchoate crimes do not qualify as controlled substance offenses under the Guidelines.

UNITED STATES V. CASTILLO    29

F.3d 575, 583–85 (7th Cir. 2021) (continuing to follow its
pre-*Kisor* precedent which deferred to the commentary of
§ 4B1.2(b), without engaging in an analysis of *Kisor*);
*United States v. Jefferson*, 975 F.3d 700, 708 (8th Cir. 2020),
*cert. denied*, 141 S. Ct. 2820 (2021) (holding that the
commentary controls and relying on past precedent without
engaging in an analysis of *Kisor*); *see also United States v.
Lovato*, 950 F.3d 1337, 1347 (10th Cir. 2020); *cert. denied*,
141 S. Ct. 2814 (2021) (relying on prior circuit precedent to
defer to Application Note 1 without engaging in an analysis
of *Kisor*).

Only the First Circuit has held that *Kisor* is not
irreconcilable with its circuit precedent. In *United States v.
Lewis*, 963 F.3d 16 (1st Cir. 2020), *cert. denied*, 141 S. Ct.
2826 (2021), the First Circuit concluded that "circuit
precedent forecloses" an argument that the definition of
"controlled substance offense" does not include inchoate
crimes, even after the Supreme Court's decision in *Kisor*. *Id.*
at 22–23. Although the *Lewis* court noted that *Kisor* requires
that we not afford deference unless a regulation is genuinely
ambiguous, it ultimately held that it "do[es] not find
anything in [its] prior opinions suggesting that those panels
understood themselves as straying beyond the zone of
genuine ambiguity in deeming Application Note 1 consistent
with § 4B1.2." *Id.* at 24.

We are unpersuaded by the First Circuit's decision. The
*Lewis* court determined it was bound to follow its prior
panels under the "law of the circuit doctrine" because its
circuit precedent interpreted § 4B1.2(b) to be within *Kisor*'s
"zone of ambiguity." *Id.* at 23–24. Therefore, according to
the *Lewis* court, there was no sound basis to conclude that
the prior panels would have "found in *Kisor* any reason to
change [their] collective mind[s]" in regard to the extent of

30                UNITED STATES V. CASTILLO

deference owed to Application Note 1. *Id.* at 24 (alterations in original) (internal quotation marks and citations omitted).

In our circuit, however, we cannot state with confidence that prior panels have interpreted § 4B1.2(b) to be within *Kisor*'s "zone of ambiguity" so as to trigger deference. Indeed, the panel in *Crum* came to the opposite conclusion. It stated: "If we were free to do so, we would follow the Sixth and D.C. Circuits' lead.  In our view, the commentary improperly expands the definition of 'controlled substance offense' to include other offenses not listed in the text of the guideline." *Crum*, 934 F.3d at 966.  Because *Crum* found that the guideline's text unambiguously excludes conspiracy offenses, our prior panel *would have* "found in *Kisor* [a] reason to change [their] collective mind[s]." *Lewis*, 963 F.3d at 24 (second and third alteration in original) (internal quotation marks and citations omitted).

Additionally, the *Lewis* court made a conclusory finding that § 4B1.2(b)'s text was ambiguous without "exhaust[ing] all the traditional tools of construction," as *Kisor* requires. 139 S. Ct. at 2415 (internal quotation marks and citation omitted).  We believe that if it had employed these tools, it would have concluded, as we do, that the guideline unambiguously excludes inchoate offenses, and therefore *Kisor* is an irreconcilable, intervening decision of a higher authority that requires reexamination of its precedent.

D.

Because we find that § 4B1.2(b)'s definition of "controlled substance offense" is unambiguous, the Supreme Court's decision in *Kisor* now makes it impermissible to defer to Application Note 1 to determine whether conspiracy fits into this definition. *Kisor*, 139 S. Ct. at 2415 ("If

uncertainty does not exist, there is no plausible reason for deference.").

Accordingly, we hold that our precedent in *Crum* and *Vea-Gonzales* applied an inappropriate level of deference to § 4B1.2(b)'s commentary, and consequently, these cases are irreconcilable with *Kisor*'s instructions regarding review of agency regulations and deference to an agency's, including the Sentencing Commission's, interpretive commentary. To the extent that *Crum* and *Vea-Gonzales* hold that an inchoate offense is a "controlled substance offense" for career enhancement purposes under the Sentencing Guidelines, we overrule them.[7]

## V.

Further, deference to Application Note 1 raises grave constitutional concerns. The Sentencing Commission, "established as an independent commission in the judicial branch of the United States," 28 U.S.C. § 991(a), "is fully accountable to Congress, which can revoke or amend any or all of the Guidelines." *Mistretta v. United States*, 488 U.S. 361, 393 (1989). Moreover, the Commission's "rulemaking is subject to the notice and comment requirements of the

---

[7] The Sentencing Commission recently adopted a proposed amendment to the text of the guideline, which inserts a new sub-section (d) to § 4B1.2, that explicitly states that inchoate offenses are included in the definition of the term "controlled substance offense." 88 Fed. Reg. 28,275 (May 3, 2023). This amendment may go into effect on November 1, 2023, absent action by Congress, and would affect sentencing enhancements for future defendants. *See* U.S.S.G. § 1B1.1(b). That the Sentencing Commission proposed an amendment to the guideline itself, rather than to the commentary, further supports our view that an inchoate offense is a separate crime from the crime conspired about, and that, at the time of Castillo's sentence, the commentary improperly expanded the Guideline's plain language.

32          UNITED STATES V. CASTILLO

Administrative Procedures Act."  *Id.* at 394.  These constraints ensure that the Sentencing Commission's rulemaking authority does not "upset the constitutionally mandated balance of powers among the coordinate Branches." *Id.* at 412.

But unlike the Sentencing Guidelines themselves, the Guidelines' commentary is not required to undergo notice and comment requirements; nor is it subject to any other mandated safeguards to cabin the Sentencing Commission's broad authority. [8]  *See Campbell*, 22 F.4th at 446 ("[I]n fashioning commentary the Commission acts unilaterally, without that continuing congressional role so vital to the Sentencing Guidelines' constitutionality.").  For the most part, the fact that the commentary is not subject to constitutional safeguards is unproblematic because we defer to commentary that "serves only to interpret the Guidelines' text" and "has no independent legal force." *Havis*, 927 F.3d at 386.

However, the Sentencing Commission's lack of accountability in its creation and amendment of the commentary raises constitutional concerns when we defer to commentary such as Application Note 1 that expands unambiguous Guidelines, particularly because of the extraordinary power the Commission has over individuals'

---

[8]  Although the Sentencing Commission provides "to the extent practicable, comparable opportunities for public input on proposed policy statements and commentary considered in conjunction with guideline amendments," its decision to do so is discretionary, and it maintains the power to promulgate commentary "without using this notice-and-comment and congressional-submission procedure." *Moses*, 23 F.4th at 353 (citing United States Sentencing Commission, Rules of Practice and Procedure 6–7 (as amended Aug. 18, 2016)).

UNITED STATES V. CASTILLO                    33

liberty interests.  *See Campbell*, 22 F.4th at 446 (explaining
that permitting commentary to add to the Sentencing
Guidelines would "allow circumvention of the checks
Congress put on the Sentencing Commission, a body that
exercises considerable authority in setting rules that can
deprive citizens of their liberty" (citation omitted)); *United
States v. Nasir*, 982 F.3d 144, 159 (3d Cir. 2020), *aff'd on
remand*, 17 F.4th 459 (noting that "separation-of-powers
concerns advise against any interpretation of the
commentary that expands the substantive law set forth in the
guidelines themselves").

Indeed, "the Sentencing Commission has established
significant, legally binding prescriptions governing
application of governmental power against private
individuals" just "short of capital punishment." *Mistretta*,
488 U.S. at 413 (Scalia, J., dissenting) (footnote omitted).
As we noted in *Crum*, by "exercis[ing] its interpretive
authority to expand the definition of 'controlled substance
offense' . . . without any grounding in the text of § 4B1.2(b)
and without affording any opportunity for congressional
review," the Sentencing Commission has used its unchecked
power to infringe on the liberty interests of criminal
defendants.  934 F.3d at 966.  "[T]he Commission's
interpretation will likely increase the sentencing ranges for
numerous defendants whose prior convictions qualify as
controlled substance offenses due solely to Application Note
1." *Id.*

Here, Castillo's career offender enhancement increased
his advisory sentence range from 151–188 months to 262–
327 months under the Sentencing Guidelines.  And his
nearly 22-year sentence—imposed by the district court
based on the Sentencing Guidelines—was approximately 7
to 10 years greater than it would have been without the

34          UNITED STATES V. CASTILLO

enhancement, assuming the district court would have
sentenced Castillo within the advisory sentence range.
Surely, neither *Kisor* nor *Stinson* permitted the Sentencing
Commission "to invoke its general interpretative authority
via commentary . . . to impose such a massive impact on a
defendant with no grounding in the guidelines themselves."
*Winstead*, 890 F.3d at 1092.

## VI.

Because the text of § 4B1.2(b) unambiguously does not
include inchoate offenses, and because we are no longer
permitted to rely on the commentary of an unambiguous
guideline after *Kisor*, we hold that Castillo's conspiracy
conviction is not a "controlled substance offense" under the
career offender enhancement, § 4B1.1.[9]  Accordingly, the
district court erred by relying on the PSR's recommendation
that Castillo qualifies as a career offender.  We vacate
Castillo's sentence and remand for resentencing consistent
with this opinion.

**VACATED and REMANDED.**

---

[9] Because Castillo does not qualify as a career offender for sentencing
enhancement purposes, we do not reach the issue of whether Castillo's
state court convictions qualify as controlled substance offenses.